UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EP GRAPHICS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CV-83-TLS |
| | ) | |
| WORKHORSE PUBLISHING LLC and | ) | |
| HOUSE OF CANS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant House of Cans, Inc.'s, Motion for Summary Judgment [ECF No. 33] filed on February 28, 2011, and Motion to Strike Inadmissible Evidence Submitted by EP Graphics, Inc., in Opposition to House of Cans, Inc.'s Motion for Summary Judgment [ECF No. 39] filed on April 14, 2011.

**BACKGROUND**

On March 13, 2009, Plaintiff EP Graphics, Inc., filed a Complaint in the Adams County Circuit Court against Defendants Workhorse Publishing LLC (Workhorse) and House of Cans, Inc. (House of Cans). The Plaintiff alleges that the Defendants failed to pay for more than $500,000 worth of printing and related services that the Plaintiff provided at the request of Workhorse. The Plaintiff alleges that Workhorse and House of Cans are jointly and severally indebted to the Plaintiff. On April 1, the Defendants filed a Notice of Removal Under 28 U.S.C. §§ 1332 and 1441(b) Diversity Jurisdiction, removing the lawsuit to this Court. On April 6, the Defendants filed separate Answers and Affirmative Defenses. Pursuant to a Suggestion of Bankruptcy filed on March 16, 2010, and 11 U.S.C. § 362 the Plaintiff's action against

Workhorse has been stayed.

On February 28, 2011, House of Cans filed a Motion for Summary Judgment. House of Cans submits that it is entitled to judgment as a matter of law because the undisputed facts show that it never agreed to be responsible for any obligations of Workhorse incurred to the Plaintiff. House of Cans also contends that the Indiana and Uniform Commercial Code (UCC) Statute of Frauds bars the Plaintiff's claims because there is no writing showing the existence of a contract. In support of its Motion for Summary Judgment, House of Cans filed an Appendix [ECF No. 34], Statement of Undisputed Material Facts [ECF No. 34-1], and Memorandum of Law [ECF No. 35].

On March 28, the Plaintiff filed a Response to House of Cans, Inc.'s Motion for Summary Judgment [ECF No. 36] and an Appendix [ECF No. 37]. The Plaintiff asserts that summary judgment is not appropriate because House of Cans agreed to pay the Plaintiff for printing services under an independent contract between the Plaintiff and House of Cans, and that the Statute of Frauds does not apply to such an independent original promise to pay for goods or services, even when such goods or services are provided to a third party. Alternatively, the Plaintiff contends that the Statute of Frauds has been satisfied.

On April 14, House of Cans filed a Reply [ECF No. 38], along with a Motion to Strike [ECF No. 39]. House of Cans argues that the Plaintiff's designated evidence does not establish that House of Cans agreed to pay for the printing services at issue. In its Motion to Strike, House of Cans seeks to exclude portions of the Affidavits of Robert Larson and Laura Lewis on the grounds that they contain inadmissible hearsay, speculative statements without any foundation, and legal conclusions. In its Response to House of Cans, Inc.'s Motion to Strike [ECF No. 43],

the Plaintiff argues that statements in Larson's Affidavit that are offered for their impact on the hearer of the statements and for the purpose of establishing context do not constitute inadmissible hearsay, that House of Cans's arguments regarding speculation go to the weight of evidence and not its admissibility, and that sufficient background and personal knowledge are offered in support of all conclusions.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56.1(b)

(directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). *See also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

**STATEMENT OF FACTS**

In opposition to House of Cans's Motion for Summary Judgment, the Plaintiff designates the Affidavits of Bob Larsen and Laura Lewis. House of Cans challenges the admissibility of certain portions of these Affidavits. The Court will not specifically address each individual statement that House of Cans challenges, but notes generally that if it determines that any portions of the Affidavits are not based on personal knowledge, do not contain specific facts to support a conclusion, or present evidence that would not be admissible at trial, the Court will address those deficiencies in its analysis of whether genuine issues of material fact preclude

4

summary judgment. Likewise, if the Court determines that an implication or legal conclusion is not supported by the facts or sound legal precedent, that implication or conclusion will be discounted. However, facts underlying a legal conclusion will remain appropriate for consideration, so long as they are based on personal knowledge, would be admissible at trial, and are outcome determinative under the governing law. The Court is also mindful that it must construe all facts in a light most favorable to the Plaintiff and view all reasonable inferences in the Plaintiff's favor. With this in mind, it is not necessary to strike any part of the Affidavits and the Court will deny the Defendant's Motion to Strike.

The Plaintiff, EP Graphics, is an Indiana corporation that provides printing services for short to medium runs for a wide variety of catalogs, books, and other publications.

House of Cans is an Illinois corporation with its place of business at 7060 N. Lawndale Ave., Lincolnwood, Illinois. It is a small, family owned, distributor of industrial containers, including metal cans, drums, steel pails, and boxes. The officer positions for House of Cans are filled by three sisters: Linda Worley is the President; Pamela Davis is the Vice President; and Karen Zieske is the Secretary/Treasurer. Each sister owns 16.5% of the shares and their children own the remaining shares.

Workhorse is an Arizona limited liability company with its principal office at 10040 E Happy Valley Road, #2033, Scottsdale, Arizona. Workhorse provides multi-media services to clients desiring to reach target communities. The members listed in the Article of Organization, filed with the Arizona Secretary of State on January 26, 2001, are Craig Burr, Miyuki Burr, Dean

Davis, and Pamela Davis.[1] This is the same Pamela Davis who is the Vice President of House of Cans, and Dean Davis and Pamela Davis are husband and wife.

Bob Larsen is an independent printing broker. In September 2000, Burr asked Larsen to obtain quotes for a publication entitled Church & Worship Technology. Larsen asked the Plaintiff to quote the job, and on September 26, the Plaintiff provided Larsen a Quotation for Printing Services that indicates it is for Dean Davis and Craig Burr from Angie Richert at EP Graphics. Burr accepted the Plaintiff's proposal and the Plaintiff sent Larsen a blank Application for Credit form. The Plaintiff maintains that it does not request a credit application from potential customers until a quote has been accepted by the customer, and that it did not know the identity of the potential customer who accepted its September 26 Quotation. Larsen took the form to Burr, who told him to take it to Pamela Davis at House of Cans because she would complete it and return it to the Plaintiff. When Larsen took the blank form to Pamela Davis, she indicated to him that she would complete the form and send it to the Plaintiff.[2]

---

[1] House of Cans submits that Pamela Davis was incorrectly listed as a member of Workhorse without her knowledge or consent and that, when she learned of the mistake, she sent Craig Burr a letter in his capacity as statutory agent of Workhorse requesting that she be removed from the records as a member. House of Cans does not provide a copy of this letter or designate any testimony from Pamela Davis to support this error and her attempted correction. The evidence that House of Cans designates in support of these statements are interrogatory responses in which Workhorse indicates that Craig Burr, Miyuki Burr, and Dean Davis have been the only members of Workhorse since on or about October 1, 2000. There is no indication or acknowledgment in these designated materials that Pamela Davis was named as a member by mistake or that she attempted to correct any mistake with respect to the Article of Organization.

[2] House of Cans attempts to strike Larsen's statement regarding these events as inadmissible hearsay. The Court considers Burr's out of court instruction to Larsen as context for Larsen's actions—not as proof that Pamela Davis would actually complete the form. The Court considers Pamela Davis's statement regarding her intention to complete the form and submit it to the Plaintiff as an exception to the hearsay exclusion under Federal Rule of Evidence 803(3), which excludes statements of a declarant's "then existing state of mind . . . such as intent, [and] plan."

On October 2, 2000, Pamela Davis, acting as Vice President of House of Cans, submitted an Application for Credit to the Plaintiff. The Application listed House of Cans in Lincolnwood, Illinois, as the applicant. Pamela Davis listed herself and her two sisters as the authorized officers of the container distribution company. The Application does not mention Workhorse, Dean Davis, or Craig Burr. A page attached to the Application provides the names, addresses, and telephone numbers for trade references that the Plaintiff could contact regarding House of Cans's credit information. The bottom of the first page of the Application states that the applicant's "signature attests financial responsibility, ability and willingness to pay our invoice in accordance with the following terms: 30 days from invoice date." (Application, ECF No. 37-3 at 9; ECF No. 37-4 at 7.)

After receiving the Application, the Plaintiff tasked its Accounting Manager, Laura Lewis, with checking House of Cans's trade references and bank to confirm its credit. On October 11, Pamela Davis contacted Lewis to correct contact information for some of the suppliers she had listed on the October 2 Application. Based on Lewis's contact with House of Cans's trade references and bank, the Plaintiff extended credit to House of Cans.

Following approval of House of Cans's credit, the Plaintiff printed the Church & Worship Technology publication and mailed invoices to House of Cans in Lincolnwood, Illinois, for the printing charges. The first invoice, dated October 31, 2000, was for printing the November 2000 issue of Church & Worship Technology. The Plaintiff continued to print the publication monthly through the August 2001 issue and to send invoices to House of Cans. In 2001, the Plaintiff also provided quotes for, and began printing, two additional publications, Managing Infection Control and American Car Care Business, which it also invoiced for

payment to House of Cans in Lincolnwood. The invoice for services dated July 31, 2001, identifies the billed party as House of Cans and as House of Cans dba Workhorse, and is sent to the attention of Dean Davis at House of Cans's business address in Lincolnwood. All of these invoices were paid without dispute.

In March 2001, Larsen began discussions with Pamela Davis about a House of Cans product catalog. In connection with finding a printer for the catalog, Larsen requested that the Plaintiff provide a quotation. Exhibit C to his Affidavit is an EP Graphics Quote Request Form dated April 2, 2001. In response, the Plaintiff submitted a Quotation for Printing Services to Pamela Davis at House of Cans, but subsequent changes to the product catalog necessitated changes to the Plaintiff's quote. The Plaintiff submitted a final quote for $11,827.00 on May 16, 2001. Angie Richert signed the quote on behalf of the Plaintiff and Pamela Davis signed the quote on behalf of House of Cans. The Plaintiff printed the House of Cans product catalog using the terms that had been established by the Application for Credit that House of Cans submitted in October 2000. On February 14, 2002, the Plaintiff sent an invoice for the product catalog to House of Cans in Lincolnwood, Illinois. House of Cans paid the February 14 invoice in full. Pamela Davis maintains that the product catalog was the last publication that House of Cans purchased from the Plaintiff.

By March 2002, the Plaintiff believed that House of Cans was delinquent in its payments to the Plaintiff for additional issues of publications requested by Dean Davis and/or Craig Burr. The Plaintiff began calling Dean Davis about the delinquencies, but he started to refuse her calls. In March 2003, the Plaintiff assigned Angie Richert to collect the late payments. Her efforts included telephone calls and emails to Dean Davis and Craig Burr. On May 15, Dean Davis

requested that Richert update the billing address for Workhorse to the Arizona address and that a copy be mailed to him at an address in Chicago for billing purposes. The Plaintiff began billing "House of Cans dba Workhorse" using the Arizona address. On October 8, Dean Davis sent a letter to the Plaintiff's co-owner, Tyler Kitt, on letterhead that named Workhorse Publishing LLC as the sender with an address for Dean Davis in Chicago. Later, between 2005 and 2008, Kitt made several trips to Arizona to meet with Craig Burr to discuss the publications that the Plaintiff was printing for Burr. Kitt states that during this time he continued to believe that Workhorse was a "dba" for House of Cans.

In this lawsuit, the invoices the Plaintiff seeks payment for relate to printing services rendered to Workhorse for publications of Church & Worship Technology, Managing Infection Control, and American Car Care. The invoices span all of 2008 and include late fees accumulated into 2009. The Plaintiff claims an outstanding balance of $586,795.20 as of March 6, 2009.

## DISCUSSION

The Plaintiff maintains that the following sequence of events is evidence that it had an agreement with House of Cans for the printing of three publications: in September 2000, the Plaintiff received a request to quote the Church & Worship Technology printing job through Larsen, an independent printing broker; the Plaintiff submitted a quote to the broker; the Plaintiff was advised that it was selected for the job; the Plaintiff provided the broker a blank Application for Credit; the Plaintiff received an Application for Credit from Pamela Davis at House of Cans; the Plaintiff printed Church & Worship Technology; the Plaintiff invoiced House of Cans for printing Church & Worship Technology; the Plaintiff received payment. This process, absent the

9

Application for Credit because it was already on file, was then repeated several more times for Church & Worship Technology and for two other publications brokered by Larsen for Burr and Dean Davis. The Plaintiff argues that regardless of whether the publications were for House of Cans or for Workhorse, it was House of Cans that agreed to pay for its services to print the magazines. The Plaintiff argues that Pamela Davis, on behalf of House of Cans, provided assurance of payment in the form of an Application for Credit to induce the Plaintiff to provide printing services.

House of Cans argues that the Application for Credit does not support the Plaintiff's theory that House of Cans contracted with the Plaintiff to provide printing services because it does not obligate House of Cans to buy or pay for anything. House of Cans also notes that the Application does not make any reference to Workhorse, Craig Burr, Dean Davis, or the publications for which the Plaintiff seeks payment.

The formation of a contract requires an offer, acceptance, consideration, and a manifestation of mutual assent. *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005). "'A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract. Assent to those terms of a contract may be expressed by acts which manifest acceptance.'" *Homer v. Burman*, 743 N.E.2d 1144, 1146–47 (Ind. Ct. App. 2001) (quoting *Pinnacle Comp. Servs., Inc. v. Ameritech Publ'g., Inc.*, 642 N.E.2d 1011, 1013 (Ind. Ct. App. 1994)). Here, the evidence shows that the Plaintiff submitted a quote for services, the quote was accepted, and the Plaintiff performed work in late 2000 through mid-2001 and submitted invoices to House of Cans in accordance with the Application for Credit. These invoices were paid without dispute. Construing all facts in a light

most favorable to the Plaintiff and viewing all reasonable inferences in its favor, this evidence could constitute an offer, acceptance, consideration, and a manifestation of mutual assent.

House of Cans argues that any agreement the Plaintiff entered for printing services was not with House of Cans, but with Craig Burr and Dean Davis of Workhorse. Although the Application for Credit did not identify the work to be performed or mention Workhorse, there is sufficient evidence from which a jury could conclude that House of Cans submitted it in response to an acceptance of the Plaintiff's quotation for printing Church & Worship Technology. The jury could also consider that no such Application was completed by any representative or member of Workhorse, and no credit was ever extended to Workhorse. Pamela Davis's signature on the Application attests financial responsibility, ability, and willingness to pay the Plaintiff's invoices 30 days from the invoice date. House of Cans argues that the Application was not related to the Workhorse publications but was, instead, submitted to the Plaintiff for it to extend printing services to House of Cans for its own product catalog. However, Larsen maintains that he did not even begin having discussions with Pamela Davis about the product catalog until well after the Application was submitted. In addition, the Plaintiff states that it does not send a client an Application for Credit form until after that client has accepted a quote for printing services. This is further evidence from which a jury could reasonably conclude that the Application was submitted in response to the Workhorse job and represented an acceptance of the Plaintiff's payment terms.

Although ambiguity exists in the record on various points, for example who paid each of the invoices that the Plaintiff sent to House of Cans for the three publications, this void in the record does not entitle House of Cans to summary judgment. It remains undisputed that the

invoices were sent to House of Cans for payment, they were paid, and House of Cans did not alert the Plaintiff to any invoicing errors or that Workhorse was the entity responsible for payment. Workhorse had not even filed its Articles of Incorporation when the Plaintiff extended credit to House of Cans and began printing Church & Worship Technology. The Court cannot conclude as a matter of law that there was no agreement between the Plaintiff and House of Cans and a jury must resolve whether the quotation, Application for an extension of credit, and payment of the invoices manifested House of Cans's acceptance of an offer to pay for the publishing work at issue. This includes deciding to what extent any agreement between the Plaintiff and House of Can extended to later publications for which the invoices were not paid (and which are the subject of this lawsuit), as this determination cannot be established as a matter of law on the current record. Although there is evidence that the Plaintiff began working directly with Workhorse agents, there remains a void of any detail regarding the payment arrangements or what the Plaintiff was advised regarding payment. There is little in the record evidencing the contracts related to the later invoices, but there is also nothing in the record to suggest what may have changed between 2001 when the invoices sent to House of Cans were paid and 2008 when they were not paid.

In support of its Motion for Summary Judgment, the Defendant invokes the statute of frauds as a defense to the Plaintiff's claim. According to the statute of frauds, a person may not bring an action "charging any person, upon any special promise, to answer for the debt, default, or miscarriage of another" "unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or the

party's authorized agent." Ind. Code § 32-2-1-1(b)(2). "A contract to pay the debt of another is a collateral contract that must comport with the statute of frauds." *Walker v. Elkin*, 758 N.E.2d 972, 965 (Ind. Ct. App. 2001). The Plaintiff responds that the contract it is seeking to enforce was not one that required House of Cans to answer for the debt of another, but was an original promise, which need not be in writing. *Walker*, 7598 N.E.2d at 975 (holding that the statute of frauds does not affect the enforceability of contracts to pay the debts of a third person that are "between two parties for the benefit of a third party" including "original promises to pay for services rendered to a third person"); *see also Quadri v. Goodyear Serv. Stores*, 412 N.E.2d 315, 317 (Ind. Ct. App. 1980) (holding that oral promises of an employee of an insurance agency to car rental and tire businesses that a certain individual was insured and authorizing billing of the insurance agency for goods and services rendered to that individual were not within the statute of frauds and were thus enforceable against the insurance agency).

House of Cans submits that the principal set forth in *Walker* is not controlling because, in the *Walker* case, an oral contract was formed when the defendant asked a lawyer to represent her son and paid the lawyer a retainer. House of Cans argues that, in contrast, it never asked the Plaintiff to provide printing services for Workhorse and "therefore no agreement was ever reached between House of Cans and EP Graphics." (Reply Brief 6, ECF No. 6.) The Defendant's argument focuses on the formation of a contract, but the statute of frauds governs the enforceability of contracts that have already been formed. *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 165 (Ind. Ct. App. 2005) (citing *Dupont Feedmill Corp. v. Standard Supply Corp.*, 385 N.E.2d 808, 810 (1979)). As stated above, whether a contract was formed in this case cannot be decided as a matter of law because genuine issues of material fact remain unresolved. If an

13

agreement was reached in this case, it was an original promise by House of Cans to pay the Plaintiff for printing services rendered for Workhorse. As such, it would not fall within the statute of frauds.[3]

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant House of Cans' Motion for Summary Judgment [ECF No. 33] and Motion to Strike [ECF No. 39]. The telephonic status/ruling conference set for June 27, 2011, at 2:00 p.m. is converted to a telephonic status and scheduling conference.

SO ORDERED on June 13, 2011.

                                         s/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT

---

[3] The parties briefly touch upon the possibility that the Uniform Commercial Code (UCC) and its statute of frauds, and not common law, applies to this case. The Supreme Court of Indiana has characterized contracts involving both the provision of goods and the performance of services as "mixed" contracts to which courts must apply a "predominate thrust test" to determine whether they fall within the UCC. *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 553–54 (Ind. 1993). The party seeking the benefit of the UCC bears the burden of establishing that the thrust of the transaction was predominantly for goods and only incidentally for services. *Id.* at 555. Here, House of Cans argues that the same conclusions argued elsewhere in its Memorandum apply to this case even if the UCC statute of frauds applies, but ultimately takes the position that the UCC does not apply. (*See* Mem. of Law 10 & n.1, ECF No. 35.) Similarly, the Plaintiff only mentions the UCC in a footnote. (EP Graphics, Inc.'s Response 11 n.3, ECF No. 36.) Thus, neither party seeks the benefit of the UCC or attempts to establish that it applies under the predominate thrust test, and the Court will likewise assume for purposes of the Motion for Summary Judgment that it does not apply.